UNITED STATES DISTRICT COURT
SOUTHERN DISTISTRICT OF NEW YORK
-------------------------------------------------------------------x

ANITA RACHVELISHVILI,

               Plaintiff,

    v.

METROPOLITAN OPERA ASSOCIATION, INC. and
AMERICAN GUILD OF MUSICAL ARTISTS, INC.
               Defendants.
-------------------------------------------------------------------x

CASE NO: _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Anita Rachvelishvili brings this action against THE METROPOLITAN OPERA ASSOCIATION, INC. and AMERICAN GUILD OF MUSICAL ARTISTS, INC. and alleges as follows:

JURISDICTION AND VENUE

1. This action arises under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

2. This Court has jurisdiction over this matter pursuant to Section 301 of the LMRA, 29 U.S.C. § 185, which provides that "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

3. Diversity of citizenship jurisdiction also exists as Plaintiff is a foreign citizen and both defendants are domiciled in the City and State of New York. Plaintiff seeks relief in excess of $75,000.

4. Venue is proper in this District pursuant to 29 U.S.C. § 185(c) because Defendants maintains principal offices within this District and/or have authorized officers or agents are engaged in representing or acting for members in the City and State of New York.

5. Plaintiff ANITA RACHVELISHVILI ("Plaintiff") is one of the world's pre-eminent opera singers, a top mezzo soprano performing in operas and concerts in major venues on a global scale. At all relevant times, she was a member in good standing of the labor union Defendant American Guild of Musical Artists and/or a member of the bargaining unit represented by the union.

6. Defendant THE METROPOLITAN OPERA ASSOCIATION, INC. ("MET") is the largest opera company in the United States and presents multiple opera performances and concerts

throughout its season.   The MET's principal place of business is located at The Metropolitan Opera House, 30 Lincoln Center Plaza, New York, NY.  The Met is engaged in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152 and 185.

7. Defendant AMERICAN GUILD OF MUSICAL ARTISTS, INC. ("AGMA") is labor union affiliated with the AFL-CIO representing singers, dancers, staging staff and others in the operatic, dance and chorale fields.  AGMA's principal place of business is located at 305 Seventh Avenue, Suite 2A, New York, NY.  AGMA is engaged in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152 and 185.  AGMA is the exclusive bargaining agent for all artists, including Soloists, under its jurisdiction at the MET.

## FACTUAL ALLEGATIONS

8. The MET contracted with Plaintiff to rehearse and perform in multiple productions during the following periods:

    October 9 – October 29, 2022; December 4 – December 10, 2022 (rehearsals); October 30, 2022 - December 3, 2022; December 11, 2022 - January 7, 2023 (*Aida* and *Don Carlo*; 15 performances and one cover);

    November 23 – December 9, 2023; December 17 – December 30, 2023 (rehearsals); December 10-December 16, 2023; December 31, 2023 - January 27, 2024 (*Carmen*; 7 performances; one cover; one concert);

    August 11 – September 21, 2024; November 24 - December 28, 2024 (rehearsals); September 22 – October 26, 2024; December 29, 2024 – January 25, 2025 (*La Gioconda* and *Aida*; 15 performances and two covers)

9. The total compensation set forth in Plaintiff's agreements for all performances from 2023-2025 exceeded $400,000 (exclusive of media and other payments).

10. At all relevant times, the MET and AGMA were parties to a collective bargaining agreement ("CBA") effective from August 1, 2021 through July 31, 2025.

11. The provisions of artists' individual agreements, including the Plaintiff's referenced contracts, cannot contain less favorable terms than the terms of the CBA and the Plaintiff's individual artist agreement incorporates the terms of the CBA.  CBA, Section One, Article Fifth (B).

12. Under Section Two, Article Fifth (N) of the CBA, contracting of Solo singers (Principal Artists) are "Pay or Play".  As such, the employment of a Principal Artist is not cancelable once contracted but the Met may choose not to cast the artist in particular performances.

13. Per Section Two, Article Fifth (N) of the CBA: "The obligation of the Met to pay Principal does not include any obligation on the part of the MET to afford Principal the opportunity of performance services for the number of appearances herein specified. However, the compensation due Principal hereunder shall not be reduced by the failure of the MET to

2

provide the number of appearances herein specified" absent exceptions that are not applicable to the instant case.

14. On or about January 28, 2023, the Met notified Plaintiff's agent that the MET was cancelling all Plaintiff's future engagements due to an alleged deterioration of vocal quality. The cancellations were for upcoming productions for the next two years (see paragraph 8).

15. While Plaintiff was temporarily limited in her very highest vocal range as a result of giving birth to her child on November 30, 2021, she was nonetheless at all times ready, willing and able to perform the roles for which she was contracted. In any event, Plaintiff has since recovered her full vocal range.

16. On or about February 6, 2023, Plaintiff's counsel informed the MET that it was in anticipatory breach of the agreements; that Plaintiff was "willing and able to perform pursuant to their terms"; and that the Met retract its terminations.

17. Through her representatives, Plaintiff repeatedly requested that AGMA (her Union) intervene and seek to enforce her rights under both the CBA and her individual artist agreements.

18. Upon information and belief (the source of which is email communications among and between the parties), in early February 2023, AGMA representatives met with representatives of the Met regarding the cancellation of Plaintiff's contracts. AGMA took the position that the Met was in violation of the "pay or play' provision of the CBA.

19. In late March 2023, the Met communicated to AGMA that the Company will offer to "buy out" Plaintiff's contracts and explained that such buyout will consist of payment of all contracted performance fees less any fees earned performing elsewhere during the relevant time periods.

20. Thereafter, the Met reneged on its offer to fully payout Plaintiff per the "pay or play" provisions of the contract.

21. The MET breached its contracts with Plaintiff and Plaintiff suffered damages as a direct and proximate result of said breach.

FIRST CAUSE OF ACTION
BREACH OF COLLECTIVE BARGAINING AGREEMENT
LABOR MANAGEMENT RELATIONS ACT SECTION 301
(AGAINST BOTH DEFENDANTS)

22. Plaintiff realleges and incorporates herein by this reference all the preceding allegations of this complaint, inclusive.

23. The CBA between the MET and AGMA is a contract within the meaning of Section 301 of the LMRA.

24. The MET breached the CBA by failing to pay Defendant for contracted services under the "pay or play" provisions of the CBA.

25. AGMA has exclusive rights to file grievances and arbitrations to enforce the CBA and/or Individual Artist Agreements.

26. Plaintiff, through her representatives, repeatedly requested that AGMA pursue claims to enforce Plaintiff's contractual rights against the MET via the grievance and arbitration provisions of the CBA to enforce Plaintiff's contractual rights.

27. Plaintiff, through her representatives, requested that AGMA's governing body, its Board of Governors consider her request to file a grievance and/or file for arbitration to remedy the MET's breach was summarily rejected by AGMA staff.

28. On or about December 26, 2024, Plaintiff's Counsel notified AGMA that "AGMA's decision to not pursue [Plaintiff's] grievance by at least attempting to seek a settlement with the Metropolitan Opera and/or filing for arbitration violates AGMA's Duty of Fair Representation" and reiterated the meritorious claims against the Met based upon the 'pay or play' provisions of both her individual artist agreement and the Met/AGMA collective bargaining agreement."

29. AGMA responded that the Union would decline to grieve the contractual violations, file for arbitration or otherwise seek a settlement with the MET.

30. AGMA breached its Duty of Fair Representation by arbitrarily, discriminatorily and in bad faith failing to challenge the MET's breach of the CBA through grievance, arbitration or other means.

31. AGMA's decision to not pursue the claim was arbitrary because the Union knew that Plaintiff had a valid breach of contract claim; initially took the position with the MET that "pay or play" was violated; received an offer of settlement from the MET that Plaintiff would have accepted and offered no valid reason for its refusal to file a grievance or arbitration on behalf of Plaintiff.

32. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages in an amount to be determined at trial.

SECOND CAUSE OF ACTION
BREACH OF INDIVIDUAL ARTIST AGREEMENTS
LABOR MANAGEMENT RELATIONS ACT SECTION 301 (29 U.S.C. § 185)
(AGAINST BOTH DEFENDANTS)

33. Plaintiff realleges and incorporates herein by this reference all the preceding allegations of this complaint, inclusive.

34. Plaintiff's Individual Artist Agreements are contracts within the meaning of Section 301 of the LMRA.

35. Defendant MET entered into and subsequently breached legally binding Individual Artist Agreements with Plaintiff.

36. Defendant MET violated the "pay or play" provisions of the Individual Artist Agreements as incorporated by reference to the CBA terms.

37. The Individual Artist Agreements are governed under the CBA which requires minimum terms and conditions.

38. Defendant AGMA has exclusive rights to file grievances and to file arbitrations to enforce provisions of the Individual Artist Agreements.

39. Despite meritorious claims, Defendant AGMA failed to grieve or arbitrate the MET's breach of contract relating to the Individual Artist Agreements.

40. AGMA breached its Duty of Fair Representation by arbitrarily, discriminatorily and in bad faith failing to challenge the MET's breach of the Plaintiff's Individual Artist Agreements through grievance, arbitration or other means.

41. AGMA's decision to not pursue the claims was arbitrary because the Union knew that Plaintiff had a valid breach of contract claim; initially took the position with the MET that "pay or play" was violated; received an offer of settlement from the MET that Plaintiff would have accepted and offered no valid reason for its refusal to file for arbitration.

42. Plaintiff suffered damages as a direct and proximate result of the Defendants' breach.

THIRD CAUSE OF ACTION
BREACH OF INDIVIDUAL ARTIST AGREEMENTS –
(AGAINST METROPOLITAN OPERA)

43. Defendant MET violated the "pay or play" provisions of the Individual Artist Agreements as incorporated by reference from the CBA.

44. Defendant MET was required to pay out the rates set forth in the Individual Artist Agreements.

45. Defendant MET failed to compensate Plaintiff per the terms of the Individual Artist Agreements and the CBA.

46. Plaintiff suffered damages as a direct and proximate result of the Defendant MET's breach.

FOURTH CAUSE OF ACTION
PROMISSORY ESTOPPEL
(AGAINST METROPOLITAN OPERA)

47. Defendant MET made promises to pay for Plaintiff's services to perform in multiple productions as detailed in the Individual Artist Agreements.

48. Plaintiff reasonably relied in good faith on the MET's promises and declined offers of engagement at other performing arts organizations as a result.

49. The MET reneged on its promises contained in the written contracts and its offer to compensate Plaintiff under the "pay or play" provisions.

50. The MET's actions caused Plaintiff to suffer financial loss after the cancellations.

51. The breach by the MET of its promises and the resulting financial losses suffered by Plaintiff were unfair, grossly unjust, and unconscionable.

FIFTH CAUSE OF ACTION
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
(AGAINST METROPOLITAN OPERA)

52. Plaintiff had several contracts either finalized or in negotiations for performances at other performing arts organizations.

53. The MET knew or should have known of the agreements between Plaintiff and other companies.

54. The MET knew or should have known that its improper and unfounded cancellations of Plaintiff's Individual Artist Agreements would result in other companies cancelling or not entering into agreements with Plaintiff to perform.

55. The Met improperly interfered with Plaintiff's business relations causing Plaintiff to suffer damages.

SIXTH CAUSE OF ACTION
PREGNANT WORKERS FAIRNESS ACT (PWFA) 42 U.S.C. 2000GG
(AGAINST METROPOLITAN OPERA)

56. Plaintiff realleges and incorporates herein by this reference all the preceding allegations of this complaint, inclusive.

57. Defendant MET is a private non-profit company that employs hundreds of staff and is covered by the PWFA; the Americans with Disabilities Act; and the New York Human Rights Law § 296.

6

58. Plaintiff was contracted and employed by the MET for all relevant time periods.

59. The MET, its agents, officers and employees knew that Plaintiff was pregnant and had given birth to her child in or about November 2021.

60. The MET was aware that Plaintiff suffered complications from her pregnancy and birth affecting her voice and vocal range.

61. Plaintiff was contracted to perform at the MET for periods for multiple periods from 2023 to 2025.

62. Plaintiff was, at all material times, able to perform the essential functions of her job position either with or without accommodation.

63. The MET cancelled all of Plaintiff's contractual engagements from 2023-2025 due to the negative effects from her pregnancy.

64. Prior to cancelling her contracts, the MET failed to make reasonable accommodations for Plaintiff and made no effort to discuss the matter or engage in an interactive process regarding possible accommodations and/or adjustments including rescheduling or reducing the number of Plaintiff's performances.

65. The unlawful employment practices complained of above were and are intentional.

66. The employment practices complained of above were done with malice and/or reckless indifference to the limitation and the adjustment or change needed to perform services.

67. Plaintiff suffered damages as a result of the MET's unlawful actions.

SEVENTH CAUSE OF ACTION
AMERICANS WITH DISABILITIES ACT
42 U.S.C. §12101 et seq. (Disability Discrimination)
(AGAINST METROPOLITAN OPERA)

68. Plaintiff realleges and incorporates herein by this reference all the preceding allegations of this complaint, inclusive.

69. Plaintiff was a qualified individual who was disabled due to her pregnancy pursuant to the Americans with Disabilities Act (ADA) and required reasonable accommodations.

70. The MET cancelled Plaintiff's contracts based on Plaintiff's disability.

71. The MET failed to make reasonable accommodations for Plaintiff and made no effort to discuss the matter or engage in an interactive process regarding possible accommodations and/or adjustments including rescheduling or reducing number of Plaintiff's performance.

72. The employment practices complained of above were done with malice and/or reckless indifference to the federally protected rights of Plaintiff.

73. Plaintiff suffered damages as a result of the MET's unlawful actions.

EIGHTH CAUSE OF ACTION
PREGNANCY DISCRIMINATION
NEW YORK HUMAN RIGHTS LAW § 296
(AGAINST METROPOLITAN OPERA)

74. Plaintiff realleges and incorporates herein by this reference all the preceding allegations of this complaint, inclusive.

75. Plaintiff, at all relevant times, was covered by New York Human Rights Laws against discrimination based on pregnancy.

76. Plaintiff was partially disabled due to her pregnancy pursuant to the New York Human Rights Law and required reasonable accommodations.

77. The MET cancelled Plaintiff's contracts based on Plaintiff's disability.

78. The MET failed to make reasonable accommodations for Plaintiff and made no effort to discuss the matter or engage in an interactive process regarding possible accommodations and/or adjustments including rescheduling or reducing number of Plaintiff's performance.

79. The employment practices complained of above were done with malice and/or reckless indifference to the federally protected rights of Plaintiff.

80. Plaintiff suffered damages as a result of the MET's unlawful actions.

NINTH CAUSE OF ACTION
BREACH OF COLLECTIVE BARGAINING AGREEMENT - DISCRIMINATION
LABOR MANAGEMENT RELATIONS ACT SECTION 301 (29 U.S.C. § 185)
(AGAINST BOTH DEFENDANTS)

81. Plaintiff realleges and incorporates herein by this reference all the preceding allegations of this complaint, inclusive.

82. Section One, Article Third of the CBA prohibits the MET from "discriminat[ing] against any ARTIST based on ARTIST's … disability…or any other trait or characteristic protected by law."

8

83. The MET discriminated against Plaintiff by, *inter alia*: cancelling Plaintiff's contracts based on Plaintiff's partial disability due to pregnancy; failing to make reasonable accommodations for Plaintiff; failing to discuss the matter or engage in an interactive process regarding possible accommodations and/or adjustments including rescheduling or reducing number of Plaintiff's performance.

84. Plaintiff's representative informed Defendant AGMA that the MET's negative employment actions were based upon Plaintiff's complications from pregnancy and from giving birth.

85. Through her representatives, Plaintiff requested that AGMA (her Union) intervene and seek to enforce her rights under both the CBA and her individual artist agreements.

86. AGMA failed to adequately investigate potential claims against the Met relating to discrimination based upon Plaintiff's pregnancy or other applicable law pursuant to the CBA.

87. AGMA failed to file a grievance and proceed to arbitration relating to discrimination based upon Plaintiff's pregnancy or other applicable law pursuant to the CBA.

88. AGMA breached its Duty of Fair Representation by arbitrarily, discriminatorily and in bad faith failing to challenge the MET's breach of the CBA through grievance, arbitration or other means.

89. AGMA's decision to not pursue the discrimination related claims was arbitrary because the Union knew that Plaintiff had valid discrimination claims; failed to pursue such claims and offered no valid reason for its refusal to file a grievance or arbitration on behalf of Plaintiff.

90. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against both Defendants;

B. Award Plaintiff damages in an amount to be determined at trial;

C. Award Plaintiff her costs and attorneys' fees incurred in bringing this action; and

D. Grant such other and further relief as the Court deems just and proper.

Dated:  March 27, 2025                              Respectfully Submitted,

                                                                             EGERT LAW

                                                                             <u>S/ Leonard D. Egert</u>
                                                                             Leonard D. Egert (LE4537)
                                                                             415-529-8520
                                                                             c/o Edelman & Edelman, PC
                                                                             60 Broad Street, Suite 2900
                                                                             New York, New York 10004
                                                                             Email:  EgertLaw@icloud.com